[No. 32304. Department One. May 6, 1953.]

FRANK M. JACOBS, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

*Charles W. Johnson, Brooks K. Johnson, Savage, Gaines & Lechner*, and *Donald L. Gaines*, for appellant.

*The Attorney General* and *Jennings P. Felix, Assistant*, for respondent.

MALLERY, J.—This is an action to recover taxes assessed against the appellant by the state tax commission for the years of 1941 to 1948, under the provisions of Rem. Supp. 1941, §§ 8370-96 and 8370-97, in the amount of $52,040.50.

Appellant was the owner of certain slot machines, which were placed in operation in the Officers' Mess at Fort Lewis, under the following contract:

"This agreement, Made and entered into this 2nd day of July, 1945 by and between the Officer's Mess, Basic Training Section, Ft. Lewis, Washington, party of the first part, and Frank M. Jacobs, party of the second part,

"WITNESSETH, in consideration of the premises herein, it is mutually understood and agreed as follows:

[1] Reported in 256 P. (2d) 838.

"1. The second party shall have the right to install and maintain pin-ball machines and other like devices in the club rooms of first party, and to maintain and operate the same in good condition at all times;

"2. The second party will pay out of his own funds all license fees due to the Federal Government on such machines;

"3. First party agrees that such machines and equipment are installed on a rental basis, and as rental therefor the second party shall receive 40% of the proceeds thereof, to be checked out at least once a week;

"4. Should such operations ever be deemed and held to be legally taxable by the State of Washington, the amount of such tax shall be first deducted before second party receives any rental, and said rental shall be 40% of the amount remaining;

"5. This agreement shall remain in force for an indefinite period of time, but may be cancelled by either party by giving written notice to that effect;

"6. All repair work and maintenance work shall be done promptly by second party and shall be at his own expense.

"7. The second party will install meters and make every effort to have game pay 80% or above.

"Witness our hands this 2nd day of July, 1945.

> "OFFICERS MESS BASIC TRAINING SECTION
> (Ft. Lewis)
> By Arthur J. Kopecky Capt. Inf. Custodian
> First Party
> Frank M. Jacobs
> Second Party."

■ The controlling statutes in force, during the period in question, are Rem. Supp. 1941, § 8370-96, which reads in part:

". . . there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in business as an operator of certain mechanical devices . . ."

and Rem. Supp. 1941, § 8370-97, which reads:

"For the purposes of this title, unless otherwise required by the context:

"(a) The word 'operator' as used herein means *the person to whom gross operating income accrues* as a result of the operation of the mechanical devices described herein whether such person is the owner or lessee thereof.

"(b) The term 'gross operating income' means the gross amount paid in by every player during each calendar month, less the amount of gross pay-outs made to such players, but without any deduction for amounts paid out to persons on whose premises the mechanical device is located or amounts paid out for any other purposes whatsoever." (Italics ours.)

The total "take" of the machine before anyone received any of it for any purpose, except a player's "pay-outs," is the "gross operating income." The person to whom it belongs must pay the tax. It is immaterial who owns the machine or repairs it or rents it, because the exclusive test of tax liability is the right to the gross income. The contract between the parties does not specifically say to whom the gross operating income accrues. We think there is an inference in paragraph three of the contract that the forty per cent of the proceeds due to appellant as rental for his machines is to be paid to him in that amount by the Officers' Mess, and that there is little if any difference between *proceeds* and *gross operating income* so far as we are here concerned.

The practice followed by the parties constitutes a mutual construction of the contract as to the person to whom the gross operating income accrued.

In describing the practice, Lieutenant Colonel Elson, the officer in charge of the Officers' Mess at Fort Lewis, testified as follows:

"Each Monday morning before the Club was opened, which was approximately, that is, the Club opened at approximately eleven o'clock and just prior to that a representative from Mr. Jacobs' office would come into the Officers Club and the machines would be opened in the presence of either myself or my assistant, who was an officer. The money was taken by machine, machines were numbered, it was taken by machine, the numbers were kept consistent in the bags and counted by a machine, counting machine and rolled out in rolls; *money was divided by myself or another officer who was my assistant, whichever one happened to be there at the moment; Mr. Jacobs was given his half and we retained ours;* . . ." (Italics ours.)

As to the nature of the agreement under which the slot machines were at the Fort, Elson testified:

"A. Slot machines were there on a rental basis. Mr. Jacobs was to furnish the Federal license. . . . Q. I will ask you if Mr. Jacobs, the plaintiff, had any control over the funds from these machines before receiving it from, receiving them from the Mess Hall? A. No, sir."

The above testimony is not contradicted anywhere in the record.

Thus, by a mutual construction of the contract consistent with its terms, the gross operating income accrued to the Officers' Mess, who paid appellant his share as rental. The appellant, who paid the tax, is not the person liable for it under the statute. He is, therefore, entitled to recover the amounts so paid.

The judgment is reversed.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.

———————

July 23, 1953. Petition for rehearing denied.